IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00255-CMA-MJW

LAURA SAXTON, and
DOUG SCHELLING,
*as the surviving parents of Kelsie Schelling, decedent*,

Plaintiffs,

v.

DONTHE LUCAS,
SARA LUCAS,
VIVIAN LUCAS,
DAWN SHAY LUCAS,
NEAL ROBINSON, *in his individual capacity*,
KEN ESPINOZA, *in his individual capacity*,
ANDREW MCLACHLAN, *in his individual capacity*, and
CITY OF PUEBLO, COLORADO,

Defendants.

**REPORT AND RECOMMENDATION ON
MOTION TO DISMISS AMENDED COMPLAINT (Docket No. 38)**

**MICHAEL J. WATANABE
United States Magistrate Judge**

Plaintiffs' daughter Kelsie Schelling has been missing for over two years; for all appearances, she was murdered the night she disappeared—but the police have never charged anyone for the crime. In Count One of this case, Plaintiffs sue the alleged murderer and his family/accomplices (the "Lucas Defendants") under state law, alleging wrongful death. In Counts Two and Three of this case, Plaintiffs sue the investigating police officer, his supervisors, and the City of Pueblo ("the Pueblo Defendants") under

42 U.S.C. § 1983 and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that their conduct (specifically, destroying evidence and incompetently investigating the case) violates Plaintiffs' constitutional right to access the courts by damaging the wrongful-death claim in Count One. Finally, in Count Four, Plaintiffs sue *both* the Lucas Defendants and the Pueblo Defendants under 42 U.S.C. § 1985, alleging a conspiracy to violate Plaintiffs' constitutional right to access the courts.

The Pueblo Defendants have moved to dismiss under Fed. R. Civ. P. 12(b)(6). (Docket No. 38.) The Court has reviewed the parties' filings (Docket Nos. 38, 54, & 58), taken judicial notice of the Court's entire file in this case, and considered the applicable Federal Rules of Civil Procedure, statutes, and case law. Now being fully informed, the Court recommends that the Pueblo Defendants' motion be granted.

## **Facts Alleged in the Complaint**

On February 4, 2013, Kelsie Schelling's doctor confirmed that Kelsie was two months' pregnant. (Docket No. 8 ¶ 10.) At the insistence of the Lucas Defendants, Kelsie drove to Pueblo that night to talk about it with the father, Donthe Lucas. (*Id.* ¶¶ 10–11.) The pair met near midnight in a Wal-Mart parking lot. (*Id.*) Kelsie was never seen again, but Donthe was captured on video around noon on February 5, 2013, driving her car and using her ATM card to withdraw cash from her account. (*Id.* ¶ 12.) On February 6, 2013, he was videotaped returning the car to the Wal-Mart parking lot; an unidentified individual later moved the car, and a week later it was found by police at a nearby hospital parking lot. (*Id.* ¶¶ 14–15.) Donthe stated in interviews that Kelsie

was present as a passenger when he was seen in the car, but the videotapes contradict this. (*Id.* ¶¶ 28–29.)

The police, and specifically Defendant Robinson, falsely told Plaintiffs that the car had been wiped clean and that no evidence had been found. (*Id.* ¶ 16.) After being confronted by Plaintiffs' private investigators, Defendant Robinson admitted that they had found evidence, but he never sent it out for processing and indeed had destroyed some potential evidence. (*Id.* ¶¶ 17–21.) Plaintiffs' private investigators searched the car and found more evidence, but Defendant Robinson refused even to take possession of the evidence, let alone process it. (*Id.* ¶¶ 22–24.) Although pressed by Plaintiffs' private investigators, Defendant Robinson also failed to have the vehicle's OnStar and navigational systems examined for records of the vehicle's most recent movements. (*Id.* ¶¶ 25–27.) Likewise, Defendant Robinson has never attempted to access the data on Donthe's password-protected cell phone. (*Id.* ¶ 46.) Defendant Robinson failed to have the Wal-Mart videotapes meaningfully enhanced to improve the images, despite offers of assistance from Plaintiffs' private investigators. (*Id.* ¶¶ 30–33.) The police have never asked for nor taken a sample of Kelsie's DNA (from her hairbrush or toothbrush, for example) for any purpose. (*Id.* ¶¶ 36–37.) Finally, the police failed to follow up on other possible leads—including a report from Defendant Sara Lucas's landlord about large bloodstains in the carpet, an anonymous tip about a possible corpse in Lake Minnequa, and indications from search dogs about possible evidence in Boggs Creek. (*Id.* ¶¶ 42–46.)

4

Publicly, the police have denied having an open homicide investigation. (*Id.* ¶¶ 35, 38.) Plaintiffs held a press conference in April 2013 to draw attention to the case; Defendants Robinson and Espinoza visited the Lucas Defendants around the time of that press conference, allegedly to assist the Lucas Defendants in handling the media. (*Id.* ¶¶ 39–40.)

Plaintiffs seek both economic and noneconomic damages, as well as injunctive relief compelling some other law-enforcement agency to take the case over from the Pueblo Police Department. (*Id.* ¶ 54.)

## Legal Standards

As Judge Christine M. Arguello, the presiding judge in this case, has recently stated:

> The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted. In deciding such a motion, all well-pled factual allegations are accepted as true and viewed in the light most favorable to the nonmoving party. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Factual allegations must be enough to raise the right to relief above the speculative level.

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, ___ F. Supp. 3d ___, 2015 WL 5695886, at *4 (D. Colo. Sept. 29, 2015) (internal citations, quotation marks, and alterations omitted).

5

The Pueblo Defendants have raised qualified immunity as part of their argument. As Judge Arguello has formulated it:

> Qualified immunity requires a two-step sequence. When a defendant asserts qualified immunity on a motion to dismiss, the district court must consider (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct. The plaintiff bears the burden of proving both parts of this test.

*Comprehensive Addiction Treatment Ctr., Inc. v. Leslea*, No. 11-cv-03417-CMA-MJW, 2013 WL 389086, at *4 (D. Colo. Jan. 31, 2013) (internal citations, quotation marks, and alterations omitted), *aff'd*, 552 F. App'x 812 (10th Cir. 2014). The plaintiff must establish both steps, and in appropriate cases the Court can resolve the case on the second step without addressing the first. *Pearson v. Callahan*, 555 U.S. 223 (2009).

## **Discussion**

The Pueblo Defendants make five arguments for dismissal:

- As to Defendants Espinoza and McLachlan, Plaintiffs fail to state any claim for individual liability under § 1983 because they do not plausibly allege personal participation;

- As to all Pueblo Defendants, Plaintiffs fail to state an access to courts claim because they have not identified any lost remedy in the underlying claim;

- As to the individual Pueblo Defendants, Defendants are entitled to qualified immunity because the specific right at issue here (Plaintiffs' right to access the courts, violated not by a present obstacle but by past misconduct) was not clearly established in 2013;

- As to all Pueblo Defendants, Plaintiffs fail to state a conspiracy claim under § 1985 because they do not plausibly allege concerted action toward a violation; and

- As to Defendant City of Pueblo, Plaintiffs fail to state a *Monell* claim because they do not plausibly allege any wrongful conduct by the municipality itself.

The Court will address all five arguments, for the sake of thoroughness. But the qualified immunity argument—as to whether the right at issue was clearly established at the time of the alleged violation—is correct and resolves all of the claims against the individual Pueblo Defendants, and so the Court will start there.

### I. Clearly Established Right of Access to the Courts

As Judge Arguello has noted, "[o]rdinarily, the law is 'clearly established' if there is Supreme Court or a Tenth Circuit decision on point. However, the overarching inquiry is 'whether the law put officials on fair notice that the described conduct was unconstitutional.'" *Comprehensive Addiction Treatment Ctr.*, 2013 WL 389086, at *4 n.7 (quoting *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010)). The Tenth Circuit "uses a 'sliding scale' system in which 'the more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Tenorio v. Pitzer*, ___ F.3d ___, 2015 WL 5813292, at *14 (10th Cir. Oct. 6, 2015) (quoting *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004)).

The law at issue here is known, in the Tenth Circuit at least, as a "backward looking" access to courts claim. *See Walker v. Hickenlooper*, ___ F. App'x ___, 2015 WL 5847486, at *6–7 (10th Cir. Oct. 8, 2015). "In forward-looking claims, [plaintiffs] seek to remove obstacles that prevent litigation. . . . In backward-looking claims, [plaintiffs] claim that their suits ended poorly or were ultimately precluded because of a state actor's past misconduct." *Id.* (citing *Christopher v. Harbury*, 536 U.S. 403 (2002)).

7

And importantly, the Tenth Circuit has specifically held—in a case similar but not identical to this one—that the law regarding backward-looking claims was not clearly established as of March 2008. *Lynch v. Barrett*, 703 F.3d 1153, 1160–63 (10th Cir. 2013). The Court has not found any cases since March 2008 that would change this conclusion. To the contrary, the Tenth Circuit insists on repeatedly *assuming* that backward-looking claims are cognizable without actually deciding so—resolving cases on other grounds and preventing the law from ever becoming clearly established.[1] *See Walker*, 2015 WL 5847486, at *7 n.9; *Lynch*, 703 F.3d at 1160; *Nicholas v. Boyd*, 317 F. App'x 773, 778 n.3 (10th Cir. 2009). As a result, *Lynch*'s holding remains incontestable: as to the specific misconduct at issue there, the law is not clearly established.

In applying the "clearly established" test, however, the Supreme Court has repeatedly instructed courts "not to define clearly established law at a high level of

---

[1] This pattern of assuming-without-deciding characterizes the treatment of backward-looking claims in both the Supreme Court and some other Courts of Appeal, as well. The pattern calls forcibly to mind Judge Stephen Reinhardt's criticism of *Pearson*:

> In *Pearson v. Callahan*, the Court held that courts are free to address only whether an official receives qualified immunity, without ever considering whether that official did, in fact, violate the constitutional rights of the plaintiff. Unfortunately, *Pearson* already is having the predictable results, with many federal courts at all levels abandoning their essential function of explaining and securing the protections of the Constitution by failing to inform law enforcement officers, among others, which practices are constitutional and which are not.

Stephen R. Reinhardt, *The Demise of Habeas Corpus and the Rise of Qualified Immunity: The Court's Ever Increasing Limitations on the Development and Enforcement of Constitutional Rights and Some Particularly Unfortunate Consequences*, 113 MICH. L. REV. 1219, 1249 (2015) (footnote callouts omitted). *See also* Aaron Nielson & Christopher J. Walker, *The New Qualified Immunity*, 87 S. CAL. L. REV. ___ (forthcoming 2015), *available at* http://tinyurl.com/oh82m9n (finding, in empirical study of court decisions, that "the concern about post-*Pearson* stagnation appears well founded").

8

generality." *Ashcroft v. al-Kidd*, 563 U.S. 731, ___ (2011). "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the violative nature of particular conduct is clearly established." *Id.* "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Pueblo Defendants here argue that *Lynch* applies to all backward-looking access to courts claims. But as required by the Supreme Court, *Lynch* carefully limited itself to its own facts. *See Lynch*, 703 F.3d at 1162 ("At least in the Tenth Circuit, the question of whether an evidentiary cover-up by police officials may violate an individual's constitutional right to court access was not clearly established at the time of the alleged violation.").

*Lynch*'s facts are not entirely square with the facts of this case. Here, drawing inferences in Plaintiffs' favor, the government's alleged obstruction includes the destruction of evidence and deliberate refusal to develop evidence; *Lynch* involved only a "conspiracy of silence" and a refusal to disclose evidence.[2] *Compare* Docket No. 8 ¶ 53, *with Lynch*, 703 F.3d at 1156. Moreover, one of the two cases *Lynch* most relied upon involved only the negligent, rather than intentional, destruction of evidence, *Wilson v. Meeks*, 52 F.3d 1547, 1556–58 (10th Cir. 1995); the other case involved the

---

[2] The Amended Complaint and Jury Demand repeatedly characterizes Defendant Robinson's conduct as the "intentional" and "bad faith" "destruction" of evidence. (*See, e.g.*, Docket No. 8 ¶ 2 ("deliberately tampered" and "caused the loss or destruction"), ¶ 18 ("destroy pertinent evidence"), ¶ 19 ("deliberate attempt to conceal or destroy physical evidence").) These are all quite conclusory—the specific factual allegations show nothing more than negligently failing to investigate or preserve evidence—but the Pueblo Defendants do not challenge Plaintiffs' characterization of their conduct, and the Court will accept it for the sake of argument.

9

intentional destruction of evidence, but the court resolved the case on other grounds without specifically addressing the defendants' conduct, *Jennings v. City of Stillwater*, 383 F.3d 1199, 1208–09 (10th Cir. 2004). Neither *Lynch* nor the cases it relies on thus speak directly to specific factual context of Plaintiffs' case. As a result, *Lynch* may not control this case; it might be, for example, that the conduct at issue here (destroying evidence) violates clearly established law, even if the conduct at issue in *Lynch* (refusing to disclose evidence) did not.

This distinction is not without merit. The Tenth Circuit has two unpublished opinions holding that the intentional, bad-faith destruction of evidence that might be relevant to a foreseeable civil claim violates the claimholder's right of access to the courts. *See Donohue v. Hoey*, 109 F. App'x 340, 356–57 (10th Cir. 2004); *Stump v. Gates*, 986 F.2d 1429 (Table), 1993 WL 33875, at *2–3 (10th Cir. Feb. 11, 1993), *affirming* 777 F. Supp. 808 (D. Colo. 1991) (Carrigan, J.). These two cases have never been disavowed by the Tenth Circuit; although later cases like *Lynch* and *Jennings* are careful not to affirm the existence of backward-looking claims in general, they also do not deny the existence of such claims. As a result, *Donohue* and *Stump* remain valid, albeit nonbinding, precedent. *Stump* even went so far as to deny qualified immunity on the question, deeming it clearly established that the government could not knowingly destroy evidence relevant to someone's claims. 1993 WL 33875, at *3. Further, the Fifth Circuit, Seventh Circuit, and Ninth Circuit recognize a cause of action for the bad-faith destruction of evidence, *Webster v. City of Houston*, 735 F.2d 838, 846 (5th Cir. 1984); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1260–66 (7th Cir. 1984); *Karim-Panahi*

*v. Los Angeles Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1988), and the Eighth Circuit recognizes a cause of action for the materially identical conduct of falsifying evidence, *S.L. ex rel. Lenderman v. St. Louis Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 850–54 (8th Cir. 2013). That's two unpublished opinions from the Tenth Circuit, and published opinions from four other Circuits.

But those cases cannot amount to "clearly established"—because the cases from the remaining Circuits suggest that distinguishing *Lynch* this way gets the contours of the claim wrong. Of the Circuits that have weighed in on such claims, including those above, none draw a distinction between destroying evidence and hiding it. The Seventh Circuit has the best-developed line of cases, and it draws a distinction based on the degree of damage to the plaintiffs' underlying claim rather than the nature of defendant's misconduct. *See Bell*, 746 F.2d at 1260–66 (finding right to access courts violated where police both fabricated and destroyed evidence to cover-up a police shooting for 20 years); *Thompson v. Boggs*, 33 F.3d 847, 852 (7th Cir.1994) (distinguishing *Bell* because the material facts could still be discovered in time to file a suit); *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir. 1995) (same); *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015) (same). The Eleventh Circuit follows suit. *Chappell v. Rich*, 340 F.3d 1279, 1284 (11th Cir. 2003) (finding no claim where underlying facts were still available to plaintiff in time to file claim).

Likewise, in the First, Third, Fourth, Fifth, Sixth, and Ninth Circuits—which, unlike the Tenth Circuit, explicitly recognize claims based on merely concealing or intentionally failing to develop evidence—the analysis focuses on the damage done to the plaintiff's

case.³ *See, e.g.*, *Germany v. Vance*, 868 F.2d 9, 16 (1st Cir. 1989); *Estate of Smith v. Marasco*, 318 F.3d 497, 511–12 (3d Cir. 2003); *Pollard v. Pollard*, 325 F. App'x 270, 272 (4th Cir. 2009); *Chrissy F. by Medley v. Mississippi Dep't of Pub. Welfare*, 925 F.2d 844, 851 (5th Cir. 1991); *Ryland v. Shapiro*, 708 F.2d 967, 974–75 (5th Cir. 1983); *Flagg v. City of Detroit*, 715 F.3d 165, 173–75 (6th Cir. 2013); *Swekel v. City of River Rouge*, 119 F.3d 1259, 1264 (6th Cir. 1997); *DeLew v. Adamson* (*DeLew II*), 293 F. App'x 504, 506 (9th Cir. 2008); *DeLew v. Wagner* (*DeLew I*), 143 F.3d 1219, 1222–1223 (9th Cir. 1998). Most of these cases reason that the court trying the underlying case can deal with abuses through spoliation orders, and thus an independent access to courts claim is appropriate only where the government's malfeasance overwhelmed such procedural controls. *See, e.g.*, *Estate of Smith*, 318 F.3d at 511; *Rossi*, 790 F.3d at 735; *cf. Foster v. City of Lake Jackson*, 28 F.3d 425, 430 (5th Cir. 1994) (evidentiary misconduct arising *during* litigation of underlying claim does not give rise to independent access to courts claim). Like the Seventh and Eleventh Circuits, none of these Circuits focus on the specific form of the defendant's malfeasance. And this makes a degree of sense. There's no reason to expect the contours of this right to depend on the *nature* of a government actor's misconduct; on that score, all that should matter is the defendant's *level of culpability*—which is already addressed by § 1983 background principles. *See, e.g.*, *Wilson*, 52 F.3d at 1558 ("It is well settled that merely negligent acts or omissions will not support a cause of action under section 1983.").

---

³ The Second Circuit, like the Tenth, has only assumed the claim without deciding it. *Sousa v. Marquez*, 702 F.3d 124, 128–29 (2d Cir. 2012). The D.C. Circuit has not weighed in at all on when the government's evidentiary misconduct rises to the level of a violation. *See, e.g.*, *Broudy v. Mather*, 460 F.3d 106, 118–23 (D.C. Cir. 2006).

12

Thus, a constitutional prohibition on *destroying* evidence is no more clearly established than the prohibition on *refusing to disclose* evidence. Instead, it appears that what matters as a constitutional matter is whether the government's misconduct has effectively precluded relief in the plaintiff's underlying claim. And despite the explicit approval of eight other Circuit Courts of Appeal, that is precisely the type of claim that the Tenth Circuit held to be not clearly established in *Lynch*. As a result, the Court concludes that *Lynch* controls this case and that Plaintiffs' right to access the courts without the evidentiary obstructions alleged here was not clearly established in February 2013. *See also Afola v. Corrs. Corp. of Am.*, No. 12-cv-02394-JLK, 2013 WL 2477126, at * (D. Colo. June 10, 2013) (Kane, J.) (surveying precedent and concluding that the right was not clearly established); *Waldron v. Drury*, No. 04-cv-01150-LTB-BNB, 2006 WL 1749391, at *8–10 (D. Colo. June 22, 2006) (Babcock, J.) (same).

In fact, Plaintiffs effectively concede the point, arguing neither that *Lynch* is distinguishable nor that backward-looking claims have become clearly established—but rather that the claim at issue here is instead a *forward*-looking claim. This is both wrong and irrelevant. It is wrong because *Christopher v. Harbury*, 536 U.S. 403 (2002), specifically describes claims where the government has caused evidence to be lost as backward-looking claims. *Id.* at 413–14 (cases in which the underlying claims "cannot now be tried (*or tried with all material evidence*), no matter what official action may be in the future" (emphasis added)). It is irrelevant because the forward- or backward-looking distinction does not control the analysis. The Supreme Court created the distinction not to provide a formal doctrinal framework, but simply to help clarify one aspect of analysis.

13

*Id.* at 414 n.11.  The forward-or-backward distinction controls nothing but how the plaintiff shows injury—*i.e.*, whether the underlying claim has been effectively precluded or is simply being barred for the time being.  *Id.* at 415.  In fact, all of the cases Plaintiffs rely on in asserting that their "forward-looking" claim is clearly established are cases already discussed above—because the substance of the claim, whether characterized as forward-looking or not, is that government actors have obstructed access to the courts by destroying relevant evidence.  Plaintiffs' attempt to characterize their claim as forward-looking does not allow them to escape the holding of *Lynch*.

Accordingly, the individual Pueblo Defendants are entitled to qualified immunity on all claims against them.  The Court recommends that the Pueblo Defendants' motion to dismiss (Docket No. 38) be granted on this ground, and that all claims against the individual Pueblo Defendants be dismissed.

## II.     Stating a Backward-Looking Claim for Access to the Courts

The Pueblo Defendants also argue that Plaintiffs fail to state a claim for backward-looking relief because they contemporaneously filed their wrongful-death action against the Lucas Defendants.  *See Harbury*, 536 U.S. at 415 ("[T]he complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought.").  As the Pueblo Defendants would have it, then, Plaintiffs face a perverse choice: they must either (1) file their claims against the Lucas Defendants with inadequate evidence, thereby waiving any claim against the government; or (2) wait until their claims against the Lucas Defendants are time-barred

14

and *then* sue the government. This misinterprets the procedure envisioned by *Harbury*. As the Tenth Circuit explained in *Lynch*, Plaintiffs have joined these claims correctly:

> Where a plaintiff prior to filing an underlying claim knows of facts suggesting an evidentiary cover-up by government officials, the underlying claim and the denial-of-access claim generally should be joined in the same action even if that requires bifurcated trials. *See Harbury*, 536 U.S. at 416, 122 S.Ct. 2179.

*Lynch*, 703 F.3d at 1157 n.1.

Plaintiffs have stated a backward-looking access to courts claim (assuming such a claim is cognizable in the Tenth Circuit) despite the current status of their case against the Lucas Defendants. Under *Harbury*, the wrongful-death claim against the Lucas Defendants must go forward first, and the claim against the Pueblo Defendants goes forward only after the conclusion of that claim—and only if the wrongful-death remedy proves to be meaningless due to the government's alleged misconduct.

Defendants do not otherwise challenge whether the Amended Complaint and Jury Demand plausibly alleges evidentiary misconduct giving rise to a backward-looking access to courts claim. *See supra* n.2. Accordingly, the Court recommends that the Pueblo Defendants' motion to dismiss (Docket No. 38) be denied as to this argument.

### III. <u>Personal Participation by Defendants Espinoza and McLachlan</u>

Defendants Espinoza and McLachlan are Defendant Robinson's supervisors. "As a general matter, § 1983 does not recognize a concept of strict supervisor liability; the defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation. Yet in situations where an affirmative link exists between the constitutional deprivation and either the supervisor's personal

15

participation, his exercise of control or direction, or his failure to supervise," the supervisor may be personally liable. *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) (internal citations and quotation marks omitted).

Defendants Espinoza and McLachlan appear only in four paragraphs of the Amended Complaint and Jury Demand. (Docket No. 8 ¶¶ 38–40 & 49). At no point do those paragraphs allege any unlawful conduct; they allege nothing more than that Defendant McLachlan participated in public announcements related to the investigation and that Defendant Espinoza accompanied Defendant Robinson on one trip to the suspect's home. Even in light of the remaining allegations, this does not plausibly allege personal participation or the exercise of control or direction by Defendants Espinoza and McLachlan. *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (Plausibility "refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).

The Court recommends that the Pueblo Defendants' motion to dismiss (Docket No. 38) be granted as to Defendants Espinoza and McLachlan for failure to plausibly allege personal participation.

**IV.** *Monell* **Liability**

Plaintiffs predicate their *Monell* theory on Defendant McLachlan's role as chief of police and, thus, as the relevant final policymaker for the City of Pueblo. *See Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986). As discussed above, however, the Amended

Complaint and Jury Demand fails to plausibly allege any personal participation by Defendant McLachlan. The Court recommends that the Pueblo Defendants' motion to dismiss (Docket No. 38) be granted as to Defendant City of Pueblo for failure to plausibly allege *Monell* liability.

## V. <u>Conspiracy with the Lucas Defendants</u>

Finally, the Pueblo Defendants argue that there are no allegations from which it can be inferred that they conspired with the Lucas Defendants to deprive Plaintiffs of a meaningful opportunity to sue for wrongful death. *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice."). The Court agrees. The Amended Complaint and Jury Demand contains no allegations at all that would plausibly give rise to any inference of an agreement and concerted action toward such a goal. *Id.*; *Robbins*, 519 F.3d at 1247. The Court recommends that the Pueblo Defendants' motion to dismiss (Docket No. 38) be granted as to the conspiracy claim under § 1985.

Plaintiffs assert their § 1985 conspiracy claim against both the Lucas Defendants and the Pueblo Defendants. However, without plausibly alleging the participation of the state actors, the entire § 1985 claim (including as against the Lucas Defendants) fails as a matter of law.

## Recommendation

For the foregoing reasons, the undersigned RECOMMENDS that:

- The Pueblo Defendants' Motion to Dismiss (Docket No. 38) be granted in part and denied in part, granting the motion as to (1) qualified immunity for Defendants Robinson, Espinoza, and McLachlan; (2) lack of personal participation by Defendants Espinoza and McLachlan; and (3) lack of municipal liability for Defendant City of Pueblo, but denying the motion in all other respects; and

- Counts Two, Three, and Four be dismissed in their entirety.

- The Court further notes that, should this recommendation be adopted in full, the Court will no longer have independent subject matter jurisdiction over the remaining claim against the Lucas Defendants under 28 U.S.C. §§ 1331 & 1332.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives de novo review of the recommendation by the District Judge, Thomas v. Arn, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions, Makin v. Colo. Dep't of Corr., 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:      October 27, 2015          */s/ Michael J. Watanabe*
                Denver, Colorado          Michael J. Watanabe
                                                   United States Magistrate Judge