IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 15-cv-00255-CMA-MJW

LAURA SAXTON and
DOUG SCHELLING, as the surviving parents of Kelsie Schelling, decedent,

    Plaintiff,

v.

DONTHE LUCAS,
SARA LUCAS,
VIVIAN LUCAS,
DAWN SHAY LUCAS,
DETECTIVE NEAL ROBINSON, in his individual capacity,
SERGEANT KEN ESPINOZA, in his individual capacity,
DEPUTY POLICE CHIEF ANDREW McLACHLAN, in his individual capacity, and
CITY OF PUEBLO, COLORADO,

    Defendants.

---

**ORDER ADOPTING OCTOBER 27, 2015 AND NOVEMBER 23, 2015
RECOMMENDATIONS OF UNITED STATES MAGISTRATE JUDGE**

---

This matter is before the Court on the October 27, 2015 and November 23, 2015

Recommendations issued by United States Magistrate Judge Michael J. Watanabe.

(Docs. ## 65 and 70.)

## I. BACKGROUND

**A. Plaintiffs' Complaint**

Plaintiffs' daughter Kelsie Schelling has been missing for over two years; it

appears that she was murdered the night she disappeared, but the police have never

charged anyone for the crime. Plaintiffs' Amended Complaint brings allegations against two separate groups of Defendants. In Claim One, Plaintiffs sue the alleged murderer, Donthe Lucas, and his family/accomplices, Sara Lucas, Vivian Lucas, and Dawn Shay Lucas (the Lucas Defendants), under Colorado state law, alleging wrongful death. (Doc. # 8 at 24–25.) In Claims Two and Three, Plaintiffs sue the City of Pueblo, investigating police officer Neal Robinson, and officer Robinson's supervisors, Sergeant Ken Espinoza and Deputy Police Chief Andrew McLachlan (the Pueblo Defendants), under 42 U.S.C. § 1983 (Section 1983) and *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978), alleging that their conduct (specifically, destroying evidence and incompetently investigating the case) violates Plaintiffs' constitutional right to access the courts by damaging Plaintiffs' wrongful-death claim in Claim One. (*Id.* at 25–27.) Finally, in Claim Four, Plaintiffs sue both the Lucas Defendants and the Pueblo Defendants under 42 U.S.C. § 1985 (Section 1985), alleging a conspiracy to violate Plaintiffs' constitutional right to access the courts. (*Id.* at 27–28.)

### B. Procedural History

This Court referred a variety of Motions to Dismiss, filed by both the Pueblo Defendants and the Lucas Defendants, to Magistrate Judge Watanabe. (Docs. ## 52, 66.) On October 27, 2015 and November 23, 2015, Judge Watanabe issued Recommendations to the Court regarding these motions. (Docs. ## 65, 70.)

Judge Watanabe's October 27, 2015 Recommendation suggested that the Motion to Dismiss brought by the Pueblo Defendants (Doc. # 38), be granted in part and

denied in part. (Doc. # 65.) Specifically, Magistrate Judge Watanabe recommended granting the Pueblo Defendants' Motion as to (1) qualified immunity for Defendants Robinson, Espinoza, and McLachlan, on Plaintiffs' Section 1983 claim; (2) lack of personal participation by Defendants Espinoza and McLachlan, on Plaintiffs' Section 1983 claim; and (3) lack of municipal liability for Defendant City of Pueblo pursuant to *Monell*, 436 U.S. at 694–95. Accordingly, he recommended that the Court dismiss Claims Two, Three and Four of the Complaint in their entirety, as against the Pueblo Defendants. (*Id.* at 17.)

Judge Watanabe's November 23, 2015 Recommendation dealt with the other Motions to Dismiss in this matter (Doc. ## 60, 62–64), filed by the Lucas Defendants. (Doc. # 70.) Specifically, Judge Watanabe recommended that the Lucas Defendants' Motions to Dismiss be granted as to Claim Four (alleging a conspiracy to violate Plaintiffs' constitutional rights to access the courts under Section 1985), but denied as to Claim One (wrongful death). (Doc. # 70 at 4.)

Additionally, in his October 27, 2015 Recommendation, Judge Watanabe noted that the Court would no longer have independent subject matter jurisdiction over Claim One pursuant to 28 U.S.C. § 1331 (providing for federal-question jurisdiction) or 28 U.S.C. § 1332 (providing for diversity jurisdiction), if the Court accepted his recommendations regarding the dismissal of the Pueblo Defendants. (Doc. # 65 at 17.)

Both of Judge Watanabe's Recommendations are incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Plaintiffs filed Objections to both Recommendations on December 11, 2015 (Doc. # 73), to which the

Pueblo Defendants responded on December 28, 2015. (Doc. # 75.) The Lucas Defendants did not file a response to Plaintiffs' Objections.

## II. ANALYSIS

### A. Legal Standard

When a magistrate judge issues a recommendation on a dispositive matter, the district judge must "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). An objection is "properly" made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting his or her review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

The Court will address each of Magistrate Judge Watanabe's Recommendations in turn below.

### B. The Pueblo Defendants' Motion to Dismiss and Judge Watanabe's October 27, 2015 Recommendation

The factual background of this case was discussed in detail in Judge Watanabe's Recommendation and will not be reiterated herein. Nevertheless, some background principles regarding qualified immunity are necessary to address Plaintiffs' Objections to Judge Watanabe's October 27, 2015 Recommendation.

The doctrine of qualified immunity protects government officials from liability for civil damages if "'their conduct does not violate clearly established . . . constitutional rights of which a reasonable officer would have known.'" *Pearson v. Callahan*, 555 U.S.

4

223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In contrast to a motion for summary judgment, which places the burden on the moving party to point out the lack of any genuine issue of material fact for trial, a motion to dismiss based on a claim of qualified immunity imposes the burden on the plaintiff to show "both that a constitutional violation occurred **and** that the constitutional right was clearly established at the time of the alleged violation." *Green v. Post*, 574 F.3d 1294, 1300 (10th Cir. 2009) (internal quotations omitted, emphasis added). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klen v. City of Loveland, Colo.*, 661 F.3d 498, 511 (10th Cir. 2011) (quoting *Zia Trust Co. ex rel. Causey v. Montoya*, 597 F.3d 1150, 1155 (10th Cir. 2010)). Nevertheless, the overarching inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional," *Clark v. Wilson*, 625 F.3d 686, 6990 (10th Cir. 2010), and this inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition," *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

      Plaintiffs allege that the Pueblo Defendants' incompetent investigation into the disappearance of Kelsie Schelling, including the Defendants' alleged destruction of evidence and their failure to pursue investigative leads, violated Plaintiffs' constitutional right to access the courts by damaging their wrongful death claim. Magistrate Judge Watanabe correctly determined – and Plaintiffs do not contest his determination – that Plaintiffs brought a so-called "backward-looking" access to courts claim, because they

allege that "their suit[] ended poorly or [was] ultimately precluded because of a state actor's **past** misconduct." [1]  *See Walker v. Hickenlooper*, No. 14-1462, --- Fed. App'x. ---, 2015 WL 5847486, at *6-7 (10th Cir. Oct. 8, 2015) (emphasis added).

In the instant case, Magistrate Judge Watanabe concluded, after much thoughtful analysis, that Plaintiffs' claims against the Pueblo Defendants were barred by qualified immunity.  Specifically, Judge Watanabe determined that the law regarding backward-looking access to court claims was not "clearly established" as of the date of Plaintiff's alleged injuries (which occurred in approximately February of 2013).[2]  In doing so, Judge Watanabe relied on *Lynch v. Barrett*, 703 F.3d 1153, 1162 (10th Cir. 2013), a case in which the Tenth Circuit specifically held that "[a]t least in the Tenth Circuit, the question of whether an evidentiary cover-up by police officials may violate an individual's constitutional right to court access was not clearly established at the time of the alleged violation [i.e., March of 2008.]" 703 F.3d at 1162.  Next, Judge Watanabe meticulously canvassed the case law in the Tenth Circuit and noted that he did not find any cases since March of 2008 (i.e., any cases decided after March of 2008 but before Plaintiff's alleged injury here, in approximately February of 2013), that would change

---

[1] In contrast, a "forward looking" access to courts claim is one in which plaintiffs "seek to remove obstacles that prevent litigation [at the present time]," such as suits by prisoners claiming that the denial of law library privileges effectively prevents them from filing claims of alleged prison abuse.  *See Walker v. Hickenlooper*, No. 14-1462, --- Fed. App'x. ---, 2015 WL 5847486, at *6-7 (10th Cir. Oct. 8, 2015).

[2] Plaintiffs' Objection to Judge Watanabe's Recommendation asserts that the law was clearly established "when the Pueblo Police Department Defendants engaged in the conduct at issue in this case, **February of 2015** and afterward." (Doc. # 73 at 4) (emphasis added).  The Court concludes that this date must be a typographical error, as the Complaint alleges that Defendants engaged in misconduct almost immediately after Kelsie Shelling disappeared in February of **2013.**

6

this outcome; indeed, "[t]o the contrary, the Tenth Circuit insists on repeatedly assuming that backward-looking claims are cognizable without actually deciding so – resolving cases on other grounds and preventing the law from ever becoming clearly established." (Doc. # 65 at 7.)  He also cogently and carefully discussed whether *Lynch* and other cases were sufficiently factually analogous to the instant case to control the qualified immunity outcome, including analyzing the fact that Plaintiffs' claims involved the alleged destruction of evidence and the deliberate refusal to develop evidence, whereas *Lynch*'s facts involved only a "conspiracy of silence" and a refusal to disclose evidence (and *Lynch* itself relied upon cases involving the negligent, rather than the intentional, destruction of evidence).  (*See* Doc. # 65 at 8–9.)  Judge Watanabe ultimately concluded that this was a distinction without a difference, because

> the cases from the remaining circuits suggest that distinguishing *Lynch* in this way gets the contours of the claim wrong.  Of the Circuits that have weighed in on such claims . . . none draw a distinction between destroying evidence and hiding it.  The Seventh Circuit has the best developed line of cases, and it draws a distinction based on the degree of damage to plaintiffs' underlying claim rather than the nature of defendants' misconduct.

(Doc. # 65 at 10.)

Plaintiffs' sole argument regarding Judge Watanabe's qualified immunity determination is, at bottom, an assertion that he got the law wrong.  Specifically, Plaintiffs claim that the law regarding backward-looking claims was "clearly establish [sic] **in January of 2013 by the Tenth Circuit's *Lynch* case**" (Doc. # 73 at 3) (emphasis added), and that Magistrate Judge Watanabe essentially misread *Lynch*'s holding.  Specifically, Plaintiffs' Objections cite *Lynch*'s introductory language that "[a]

backwards looking access claim **may** arise where a plaintiff alleges an underlying claim cannot be tried, or be tried with all the evidence, because official conduct caused the loss or inadequate resolution of that claim." (Doc. # 73 at 3) (quoting *Lynch*, 703 F.3d at 1157, emphasis in original). Of course, this quoted language does not contradict the Tenth's Circuit's actual holding that a constitutional right to court access was not "clearly established," and an examination of the *Lynch* decision and Magistrate Judge Watanabe's Recommendation confirms that he correctly determined (and applied) *Lynch*'s holding. *See Lynch,* 703 F.3d at 1162-63 (10th Cir. 2013) (emphasis added) ("**At least in the Tenth Circuit**, the question of whether an evidentiary cover-up by police officials may violate an individual's constitutional right to court access **was not clearly established at the time of the alleged violation [in March of 2008]**. A reasonable officer might not have understood what Defendant Officers did (or refused to do) violated that right.") It is also clear that Judge Watanabe's statement about the Tenth Circuit's "repeatedly assuming that backward-looking claims are cognizable without actually deciding so" (Doc. # 65 at 7), was based on his canvassing of other cases – **not**, as Plaintiffs assert, on the Tenth Circuit's language in *Lynch* about how it was required to "assume" the constitutional violation occurred given the procedural posture of the case. (*See* Doc. # 73 at 4.) As such, the Court has confirmed that Judge Watanabe correctly determined that Plaintiff's claims against the individual Pueblo Defendants are precluded by virtue of qualified immunity, and Plaintiffs are incorrect in their reading of *Lynch*'s holding. Accordingly, Plaintiff's claims against the Pueblo Defendants fail as a matter of law.

Judge Watanabe also recommended that the claims against Defendants Espinoza and McLachlan be dismissed because Plaintiffs failed to allege that they personally participated in the alleged constitutional violations. (Doc. # 65 at 14.) Specifically, he noted that Defendants Espinoza and McLachlan

> appear only in four paragraphs of the Amended Complaint and Jury Demand. At no point do those paragraphs allege any unlawful conduct; they allege nothing more than that Defendant McLachlan participated in public announcements related to the investigation and that Defendant Espinoza accompanied Defendant Robinson on one trip to the suspect's home. Even in light of the remaining allegations, this does not plausibly allege personal participation in or exercise of control or direction by Defendants Espinoza and McLachlan.

(*Id.* at 15). Plaintiffs' arguments that this conclusion was erroneous amount to little more than a recitation and characterization of the same facts and arguments that were before Judge Watanabe in Plaintiffs' response to the Motion to Dismiss (see Doc. # 54 at 15–16); accordingly, these arguments do not constitute a proper objection. In any case, the Court has carefully reviewed Plaintiffs' arguments about how their allegations meet the standard for personal participation, and determined that none of Plaintiffs' allegations plausibly show that either Defendant Espinoza or Defendant McLachlan personally participated in the alleged constitutional violations at issue. Therefore, although the Court's qualified immunity determination results in dismissal of the claims against all three of the individual Pueblo Defendants, in the alternative, the Court affirms Judge Watanabe's Recommendation that the claims against Defendants Espinoza and McLachlan be dismissed for failure to demonstrate personal participation.

Additionally, although Plaintiffs do not specifically contest this issue, given Plaintiffs' failure to allege personal participation by Defendant McLachlan (the purported

policy maker for the City), Plaintiffs have also failed – by definition – to allege a plausible theory of *Monell* liability against the City of Pueblo.

Finally, Judge Watanabe determined that there were no allegations from which it could be inferred that the Pueblo Defendants conspired with the Lucas Defendants to deprive Plaintiffs of a meaningful opportunity to sue for wrongful death. Plaintiffs do not properly object to this conclusion, asserting only (as they did before Judge Watanabe) that the "broader factual context" supports their argument that a conspiracy can be inferred from their allegation that Detective Robinson and Sergeant Espinoza traveled to the residence of Donthe and Sara Lucas to advise them that a press conference was being held regarding Kelsie Schelling and that Donthe needed to defend himself to the media and family. (*See* Doc. # 54 at 15) ("Sergeant Espinoza and Detective Robinson's visit to the Lucas residence is particularly relevant for the allegation that there is a shared conspiratorial objective. The police officers visited the putative suspects and likely defendants in a Wrongful Death case in order to inform them about and assist them in preparing a defense to the Plaintiffs' contentions that the Lucases were responsible for Kelsie Schelling's disappearance and death.").

In any event, the Court agrees that this single meeting does not plausibly suggest that there was a conspiracy between the Lucas Defendants and the Pueblo Defendants under 42 U.S.C. § 1985. *See Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989) ("Because plaintiff failed to allege specific facts showing agreement and concerted action among defendants, the district court properly dismissed the conspiracy claim with prejudice."); *see also Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008)

(plausibility "refer[s] to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))).  Plaintiffs also do not object to Judge Watanabe's conclusion that, given the failure to allege personal participation by Defendants Espinoza and McLachlan, that Plaintiffs' conspiracy claim against those Defendants also fails as a matter of law.

For the foregoing reasons, the Court concludes, after conducting its *de novo* review, that Judge Watanabe did not err in recommending that Claims Two, Three, and Four of Plaintiffs' Amended Complaint be dismissed with prejudice against the Pueblo Defendants.

### C. The Lucas Defendants' Motions to Dismiss And Judge Watanabe's November 23, 2015 Recommendation

As discussed above, Claim Four of the Amended Complaint alleged that the Lucas Defendants conspired with the Pueblo Defendants to destroy, conceal, or fail to develop evidence that would be relevant to Plaintiffs' wrongful death claim in violation of Plaintiffs' constitutional right to access the courts.  Judge Watanabe's November 23, 2015 Recommendation determined that the Amended Complaint alleged no factual content from which it could plausibly be inferred that the Lucas Defendants had any involvement with the alleged acts or omissions of the Pueblo Defendants.  (Doc. # 70 at 3.)  In their Objection, Plaintiffs merely reiterate their argument that Defendant Espinoza's meeting with Defendant Robinson at the Lucas home indicates that there was a conspiracy in violation of 42 U.S.C § 1985.  (Doc. # 73 at 8.)  The Court has

already rejected this argument in its foregoing analysis; accordingly, it agrees that Claim Four of the Amended Complaint should also be dismissed with prejudice against the Lucas Defendants.

Additionally, Judge Watanabe's November 23, 2015 Recommendation determined that Plaintiffs' Amended Complaint alleged sufficient facts to support Claim One, that is, Plaintiffs' Wrongful Death claim against the Lucas Defendants, brought under Colorado state law.  (Doc. # 70 at 4.)  The Court agrees with this determination.  However, having dismissed all of plaintiff's claims arising under federal law, the Court must now decide whether it should exercise supplemental jurisdiction over Claim One.  Although courts may exercise supplemental jurisdiction over state law claims if there is otherwise a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3) provides: "[t]he district court[] may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction."  The Tenth Circuit reviews a district court's decision not to exercise jurisdiction under 28 U.S.C. § 1367(c) (Section 1367(c)) for abuse of discretion.  *See Nielander v. Bd. of Cnty. Comm'rs*, 582 F.3d 1155, 1172 (10th Cir. 2009).  When Section 1367(c) is implicated in the Tenth Circuit, courts are advised to dismiss pendent state law claims "'absent compelling reasons to the contrary.'" *Brooks v. Gaenzle*, 614 F.3d 1213, 1230 (10th Cir. 2010) (internal quotation omitted); *see also Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (emphasis added, internal quotation omitted) ("When all federal claims have been dismissed, the court may, **and usually should,** decline to exercise jurisdiction over any remaining state claims."); *Endris v. Sheridan Cnty. Police*

*Dep't,* 415 Fed. App'x. 34, 36 (10th Cir. 2011) (unpublished) ("any state-law claims for assault and battery or mental and emotional injury were inappropriate subjects for the exercise of pendent jurisdiction where all federal claims had been dismissed"); *Brooks v. Gaenzle,* 614 F.3d 1213, 1229 (10th Cir. 2010) ("[The Tenth Circuit has] generally held that if federal claims are dismissed before trial, leaving only issues of state law, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."). The United States Supreme Court has also recognized that

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

Because Plaintiffs' federal claims have been dismissed, and because the Court sees no compelling reason to exercise pendent jurisdiction over Plaintiffs' state law claims,[3] the Court dismisses Claim One, but does so without prejudice.

---

[3] Although the statute of limitations for filing of a wrongful death action is two years from the date of death, pursuant to Colo. Rev. Stat. §§ 13-80-102(1)(d) & 13-80-108(2), federal law provides that "The period of limitations for any claim asserted under [§ 1367(a)] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed." 28 U.S.C. § 1367(d). This tolling provision provides "assurance that state-law claims asserted under § 1367(a) will not become time barred while pending in federal court." *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1168 n.4 (10th Cir. 2004) (internal quotation omitted); *see also Jinks v. Richland Cnty.*, 538 U.S. 456, 459 (2003) ("To prevent the limitations period on . . . supplemental claims from expiring while the plaintiff was fruitlessly pursuing them in federal court, § 1367(d) provides a tolling rule that must be applied by state courts.") Thus, if Plaintiffs wish to pursue their wrongful death claim against the Lucas Defendants, they have 30 days from the dismissal of this case within which to file an action in state court.

### III. **CONCLUSION**

The Court has conducted a full, *de novo* review of this matter, including examining all relevant pleadings, the Recommendations, and Plaintiff's Objection thereto. Based on this *de novo* review, and for the foregoing reasons, the Court concludes that Magistrate Judge Watanabe's Recommendations are correct and are not called into question by Plaintiff's Objections. Accordingly, it is hereby ORDERED that Plaintiffs' Objections (Doc. # 73) are OVERRULED. It is

FURTHER ORDERED that the Recommendations of Magistrate Judge Watanabe (Docs. ## 65 and 70) are AFFIRMED and ADOPTED as an Order of this Court. Pursuant to those Recommendations, it is

FURTHER ORDERED that the Pueblo Defendants' Motion to Dismiss (Doc. # 38) is granted in part and denied in part. Specifically, Claims Two, Three, and Four are DISMISSED WITH PREJUDICE as against the Pueblo Defendants. It is

FURTHER ORDERED that the Lucas Defendants' Motions to Dismiss (Docs. ## 60, 62, 63, 64) are granted as to Claim Four against the Lucas Defendants, but denied as to Claim One. Accordingly, Claim Four is DISMISSED WITH PREJUDICE against the Lucas Defendants. It is

FURTHER ORDERED that because the Court will not exercise pendent jurisdiction over Plaintiffs' remaining state law claim, Claim One is hereby DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that this case is hereby dismissed in its entirety.

DATED: February 26, 2016                    BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge